IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| NAFICE FIELDS | : | NO. 07-732-2 |

MEMORANDUM

Bartle, J.                                               August 23, 2011

Before the court is the motion of defendant Nafice

Fields ("Fields") to vacate, set aside, or correct his sentence

under 28 U.S.C. § 2255.

Fields was convicted by a jury on April 14, 2008 of one

count of being a felon in possession of a firearm in violation of

18 U.S.C. § 922(g)(1).[1]  Fields was sentenced to 84 months'

imprisonment and a term of supervised release of three years.

See United States v. Fields, No. 07-732-2 (E.D. Pa. July 15,

2008).  His conviction was affirmed on appeal.  See United States

v. Fields, 347 F. App'x 782 (3d Cir. 2009), cert. denied, 131

S. Ct. 240 (2010).

Fields subsequently filed a § 2255 petition pro se in

which he alleged a deprivation of his Sixth Amendment right to

---

1.  Fields was tried along with co-defendant Kaleel Wilson.
Wilson was convicted of:  (1) possession with intent to
distribute cocaine base in violation of 21 U.S.C. § 841(a)(1),
(b)(1)(B)(iii); (2) possession of a firearm in relation to a drug
trafficking crime in violation of 18 U.S.C. § 924(c)(1); and (3)
being a felon in possession of a firearm in violation of 18
U.S.C. § 922(g)(1).

effective assistance of counsel through a long list of errors made by his court-appointed counsel at the trial, at sentencing, and on appeal.  The court appointed counsel and held an evidentiary hearing regarding these allegations on May 10, 2011. Counsel subsequently filed an amended petition.  Fields requests that we vacate his conviction and order a new trial.

I.

The underlying facts, in the light most favorable to the Government, are as follows.  On the evening of July 5, 2007, an individual named Desmond Davis ("Davis") came to the Philadelphia Police Southwest Detectives Division to report that Fields and his co-defendant Kaleel Wilson ("Wilson") were driving around his neighborhood in a white minivan and were threatening to kill him.  Davis also asserted that Fields and Wilson possessed weapons and narcotics inside the van.

As a result of this information, police officers Jared Netzer ("Netzer") and Ryan Murphy ("Murphy") went to the area of 53rd Street and Woodland Avenue and stopped a white minivan. Inside were Wilson, Fields, and a third individual named Baba Tunkara ("Tunkara").  Wilson was driving the car, and Tunkara was in the front passenger seat.  Fields was seated in the back third row of the van with his legs on top of the seat.  Officer Murphy removed a handgun from Tunkara's left pocket.  He then discovered a loaded 9-millimeter handgun underneath Fields' seat.  Officer Netzer removed $1,388 from Wilson.  In addition, the officers

-2-

discovered 115 packets of narcotics in the visor above the driver's seat.

At trial, Tunkara testified that Wilson drove around for several hours prior to picking up Fields and that police officers stopped the van only a few minutes after Fields got into the van.  He never saw Fields with a gun before or after he entered the van.  He also stated that he never observed Fields attempt to hide a gun while he was in the van.  Contrary to what Officer Murphy had said, Tunkara alleged that Fields was actually seated in the second row of the minivan, not the third.

Desmond Davis also testified pursuant to a material witness warrant.  He observed Fields on the day in question with a gun on his left hip.  On cross-examination, Davis admitted that this information was not in the written statement that he gave to police.  However, he further explained that he made the police aware of this information and that he failed to read his statement to verify its completeness before signing it.

An employee of Hertz produced evidence that Wilson rented the white minivan at approximately 4:00 p.m. on July 5, 2007.  The employee also explained the procedures that Hertz uses to clean its vehicles between rentals.  The government solicited this testimony to demonstrate that it was unlikely that the firearm found under the rear seat belonged to a prior rental customer.

An FBI agent testified that none of the three persons in the minivan was an original purchaser of any of the firearms

-3-

recovered.  There was additional evidence that the firearms were not fingerprinted and that fingerprinting was not common in this type of case.  The government rested on April 11, 2008.  The defendant offered no evidence, and the court thereafter charged the jury.

During deliberations, the jury sent the court two questions.  First, the jury asked "[c]an we get a copy of Baba Tunkara's testimony?"  The court declined to do so.  Instead, the court informed the jury that "unfortunately, that is not available, and you're going to have to rely on your recollection of his testimony, as well as the testimony of all other witnesses in the case."

At the same time, the jury also inquired "[w]hat personal information of the jurors has been revealed to the defendants?  Address?"  The court responded to this question by explaining that:

> In this court, the addresses of the jurors are never revealed to any of the lawyers, any of the parties, in any case, whether it's civil or criminal, and while there is a list with names that is passed back and forth when the jury selection process takes place, those lists are always returned to the Court after the jury selection has been made.
>
> I also remind you that of course this case must be decided solely on the evidence presented to you and the law as I have given it to you.  You may return to the jury deliberation room.

Counsel for Fields did not object to the court's responses to either of the jury's questions.

On April 14, 2008, the jury returned a verdict of guilty as to Fields.  Defense counsel did not renew Fields' motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.

On July 15, 2008, Fields was sentenced to 84 months' imprisonment.  The United States Probation Office calculated his Guidelines sentencing range to be 92-115 months' imprisonment. This figure included a two-point enhancement for possessing a stolen firearm and a four-point enhancement for possessing a firearm in connection with crack cocaine.  See U.S.S.G. §§ 2K2.1(b)(4); 2K2.1(b)(6).  However, the court rejected the four-point enhancement and calculated Fields' Guidelines range to be 63-78 months.  The court then sentenced Fields to a term of 84 months' imprisonment.  See United States v. Fields, No. 07-732-2 (E.D. Pa. July 15, 2008).  This sentence represented an upward departure based on the severity of the crime committed and Fields' lengthy criminal history.  Id.; see also 18 U.S.C. § 3553(a).

Counsel filed an appeal on behalf of Fields regarding the sufficiency of the evidence and the denial of his motion to sever his case from that of his co-defendant, Wilson.  As noted previously, the Court of Appeals affirmed the conviction and the Supreme Court denied certiorari.  See Fields, 347 F. App'x at 784, cert. denied, 131 S. Ct. at 240.

-5-

II.

Fields alleges ineffective assistance of counsel under the standard set forth in Strickland v. Washington. 466 U.S. 668 (1984). In his pro se petition, Fields contends that counsel was ineffective based on several grounds: (1) failing to offer certain alibi evidence; (2) failing to subpoena certain witnesses; (3) stipulating to one of the testifying officer's fingerprinting expertise; (4) stipulating to the interstate commerce element of the offense; (5) failing to move to strike Davis's testimony as "coerced" because he was present in court on a material witness warrant under 18 U.S.C. § 3144; (6) failing to object to the stolen firearm enhancement at sentencing; (7) failing to appeal his 84-month sentence; and (8) failing to hire a private investigator to examine the actual minivan in which he was arrested.

In addition, his amended petition asserts that trial counsel was ineffective by: (1) failing to object to the court's decision not to read back Tunkara's testimony; (2) failing to ask the court to voir dire the jury to ensure that it was still impartial after the jury questioned whether Fields and his co-defendant had access to their personal information; (3) failing to appeal these two issues; and (4) failing to renew the motion for a judgment of acquittal in order to preserve a more favorable standard of review on appeal.

Under the Strickland standard, Fields bears the burden of proving that: (1) counsel's performance was deficient; and

-6-

(2) he suffered prejudice as a result.  Id.  The first prong
requires that "[counsel's] performance was, under all the
circumstances, unreasonable under prevailing professional norms."
United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Our scrutiny of counsel's performance is highly
deferential.  We presume that counsel's actions were undertaken
in accordance with professional standards and as part of a "sound
trial strategy."  Strickland, 466 U.S. at 689 (quoting Michel v.
Louisiana, 350 U.S. 91, 101 (1955)).  To satisfy the prejudice
prong, Fields must show "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different."  Id. at 694.  A
"reasonable probability" is one that is "sufficient to undermine
confidence in the outcome."  Id.  When ruling on a § 2255
petition, the court may address the prejudice prong first "and
reject an ineffectiveness claim solely on the ground that the
defendant was not prejudiced."  Rolan v. Vaughn, 445 F.3d 671,
678 (3d Cir. 2006).

We first address Fields' contention that counsel was
ineffective for failing to object to the court's decision not to
provide the jury with a copy of Tunkara's testimony.  "A trial
court has broad discretion in deciding whether to accede to a
jury's request for a reading of testimony."  United States v.
Zarintash, 736 F.2d 66, 69-70 (3d Cir. 1984).  The court may
decline to read back testimony where:  (1) the request would slow
the trial because the testimony at issue is lengthy; or (2) there

-7-

is a danger that the jury may give undue weight to the testimony. United States v. Bertoli, 40 F.3d 1384, 1400 (3d Cir. 1994).

The testimony of Tunkara totaled 67 pages and had not yet been transcribed at the time of the request.  Tunkara testified for approximately one hour and thirteen minutes.  Re-reading or playing back the testimony of Tunkara to the jury would have unduly slowed the progress of the trial.

Although Tunkara testified that he never saw Fields with a gun, Davis testified that he observed Fields with a gun on the day in question.  Furthermore, the arresting officer testified that he found Fields in the rear seat of the van with a gun at his feet.  The court properly instructed the jury to consider their recollection of Tunkara's testimony along with "the testimony of all other witnesses in the case."  Reading or playing back Tunkara's testimony alone would have given undue weight to his testimony.  Accordingly, counsel was not ineffective for failing to object.

Fields also contends that counsel was ineffective for failing to request a voir dire of the jury after the jury questioned whether the defendants knew any of the jurors' personal information such as their addresses.  In Iyer v. Everson, our Court of Appeals considered a similar contention. 238 F. App'x 834, 837 (3d Cir. 2007).  There, the plaintiff brought an employment discrimination action against the Internal Revenue Service ("IRS").  Id. at 835-36.  During deliberations, a juror asked the deputy clerk how the jurors could be certain that

-8-

the IRS would not retaliate against them if the jury returned a verdict in the plaintiff's favor.  Id.  The court reassured the jury by explaining that "as far as who you are, after we choose you, the only person that knows who you are, is I.  In other words ... what's known as the jury sheets are no longer in the possession of any of the parties."  Id.  The Court of Appeals concluded that this instruction was appropriate and affirmed the judgment of the District Court.  Id. at 838.

Here, the court explained that "the addresses of the jurors are never revealed to ... any of the parties" and that the lists of juror names were returned to the court after selection. The court also reminded the jury to decide the case "solely on the evidence presented to you and the law as I have given it to you."  This instruction sufficiently addressed the potential concerns of the jury and reminded them to remain impartial. There is no reason to suspect that the jury's verdict was the result of fear or that voir dire of the jury was necessary. Under those circumstances, counsel was not ineffective for failing to request voir dire.

Similarly, counsel was not ineffective for failing to appeal these issues.  Where the decision to appeal a particular issue is concerned, "[t]he test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether ... [the Court of Appeals] would have likely reversed and ordered a remand had the issue been raised on direct appeal." United States v. Mannino, 212 F.3d 835, 844 (3d Cir. 2000).  In

-9-

our view, reversal on these two issues in question would have been highly unlikely.

Counsel testified at the hearing on May 10, 2011 that "[f]rom all of my experience, I know that on appeal, you need to bring the best issues....  I thought we had a terrific issue on the sufficiency issue and the severance issue."  The attorney who represented Fields at trial is an experienced and well-respected member of the criminal defense bar.  We cannot say that the strategic decision to focus on other issues on appeal was unreasonable under the circumstances of this case.  See Strickland, 466 U.S. at 690-91.

Fields further asserts that counsel was ineffective for failing to renew the motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  Under Rule 29, a court may enter a judgment of acquittal if the evidence "is insufficient to sustain a conviction."  Fed. R. Crim. P. 29.  Where a defendant has renewed his motion under Rule 29, the verdict will be sustained on appeal if "viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Introcaso, 506 F.3d 260, 264 n.2 (3d Cir. 2007).  In contrast, an appeal of the sufficiency of the evidence is subject to a "plain error" standard where a defendant has failed to renew his Rule 29 motion.  United States v. Anderson, 108 F.3d 478, 480 (3d Cir. 1997).

While considering Fields' case, our Court of Appeals stated:

> While we acknowledge that proof of actual possession does not exist in this case, <u>there is sufficient evidence to permit a rational jury to find constructive possession</u>.  Davis testified that he saw Fields carrying a black gun earlier on the same day as his arrest as he exited and reentered the white minivan.  Perhaps most significantly, Officer Murphy testified that he observed the gun directly below Fields, who sat in the rear seat of the van.  The fact that Fields was in such close proximity to the gun in a small, enclosed vehicle, as opposed to a larger and more spacious residence, is especially telling.  Finally, Prawl's testimony regarding the routine cleaning procedures at Hertz suggests that the gun did not belong to a prior occupant of the vehicle.

<u>Fields</u>, 347 F. App'x at 787 (emphasis added).  This language suggests that the Court of Appeals would have sustained Fields' conviction even under the "rational trier of fact" standard of review.  <u>See</u> <u>Introcaso</u>, 506 F.3d at 264 n.2.  Under these circumstances, we cannot say that counsel's failure to renew the motion for judgment of acquittal under Rule 29 was constitutionally defective.

The remainder of Fields' contentions are without merit.  His petition under § 2255 will be denied.  A certificate of appealability will not issue.